**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LATOSHA N. MATHIS,
AKA SHAHANNA BYRD,**

      Petitioner,                      CASE NO. 2:09-CV-155
                                          CRIM. NO. 2:07-CR-266
v.                                  JUDGE JOHN D. HOLSCHUH
                                          MAGISTRATE JUDGE E.A. PRESTON DEAVERS
**UNITED STATES OF AMERICA,**

      **Respondent.**

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant motion, Respondent's Return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

Petitioner's underlying convictions for carjacking and using, carrying and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§2119(2); 924(c)(1)(A)(iii) are the result of her negotiated guilty plea. *See* Doc. Nos. 47-50. On August 26, 2008, the District Court imposed an aggregate term of 230 months imprisonment. Doc. Nos. 55-56. Petitioner did not file an appeal.

On February 26, 2009, she filed the instant *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. She asserts that she was denied effective assistance of counsel because her attorney told her she would lose if she proceeded to trial; because the prosecution had no gun to establish her guilt of discharging a firearm; and because her attorney

failed to file any motions to assist in reducing her sentence.

It is the position of the Respondent that these claims are without merit.

## MERITS

Because a criminal defendant waives numerous constitutional rights when he or she pleads guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir.1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the Court must look at the totality of circumstances surrounding the plea. *Id*. A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Further, a criminal defendant cannot successfully challenge the voluntariness of his or her plea merely on the basis that he or she was motivated to plead guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance

> affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

On May 2, 2008, after a hearing, the Court denied petitioner's motions to suppress the identification of her as the assailant, and to suppress physical evidence seized during the execution of the search warrant of her apartment. Doc. No. 45. The record confirms that defense counsel did not file any motions for reduction of her sentence. Defense counsel, with Petitioner's participation, however, negotiated the terms of her sentence prior to entry of her guilty plea. She agreed to be sentenced to an aggregate term of 230 months incarceration. Doc. No. 47. She indicated she understood that she faced a possible maximum term of 25 years on Count One of the Superseding Indictment, and a mandatory consecutive term of ten years on Count Two. *Id.*; *Guilty Plea Transcript*, at 3. The government dismissed Counts Three and Four, thereby substantially reducing her exposure to a lengthier term of imprisonment. She obtained a three-level reduction in her recommended sentence under the United States Sentencing Guidelines for acceptance of responsibility and timely notifying the authorities of her intention to plead guilty. *PreSentence Investigation Report*, at ¶¶53-54. She stated under oath that she had had ample opportunity to review her case with defense counsel and was satisfied with his representation. *Guilty Plea Transcript*, at 8. The District Court advised Petitioner of all of the rights she was waiving by virtue of her guilty plea. At all times, Petitioner indicated that she understood and asked no questions. *Guilty Plea Transcript*, at 9-11. She agreed with the terms of her guilty plea agreement as recited by the prosecutor. *Id*. at 12. As she stated in open court, her willingness to plead guilty was the

3

result of her discussions with counsel and negotiations with the prosecutor. *Id.* She had reviewed the guilty plea agreement with her attorney before she signed it. There were no other agreements or promises that had been made, and no one had forced or threatened her into pleading guilty. *Id.* She understood that the Court would impose 230 months pursuant to the terms of her guilty plea agreement. *Id.* at 13. She had told her attorney everything she knew about the charges against her. He had advised her of the law that would apply in her case. *Id.* at 13. The Court advised her of the elements of the offenses charged, of the mandatory consecutive ten year term of imprisonment required on Count Two, a well as the maximum sentence that she faced. *Id.* at 13-16. Petitioner always indicated that she understood.

    The prosecutor recited the facts of the case as follows:

> [O]n December 4th of 2007 Wide Open West cable technician, Arturo Valencia, was approached by the defendant while seated in his company work van. His van was located in a parking lot at 3978 Carl Road. The defendant, Latosha Mathis, pointed a firearm at Valencia and forced entry into the van. Valencia attempted to flee through the driver's side door of the van, but the defendant forced Valencia into the passenger's seat, assuming the driver's seat. Valencia attempted to flee through the passenger's side door, but the defendant demanded that Valencia remain in the van, motioning towards the firearm. The defendant drove the van as Valencia sat in the passenger seat. The defendant demanded money and took Valencia's wallet. Apparently upset with the small amount in the wallet, the defendant stated that they were going to Valencia's house. Valencia told the defendant that he had no money at the house. The defendant became irate and fired a round into the floorboard of the van. Valencia became fearful for his life, and when the opportunity presented itself, he attempted to flee from the cable van at the intersection of Oakland Park and Maize Road. As Valencia rolled out of the driver's side door, the defendant fired one round into Valencia's back. The defendant fled with the van, later abandoning it near the apartment complex where the car jacking began.
>
> The following day, Columbus and FBI Violent Crime Task Force Officers and Agents reviewed the offense report and discovered that

> the victim's cell phone had been stolen during the car jacking. Columbus Division of Police Robbery Squad requested the Task force to assist in exploring the cell phone lead. It was discovered that the subject was using the victim's phone to make calls.
>
> On December 5th of 2007 a federal search warrant was obtained, and Latosha Mathis, the defendant, was arrested inside of her apartment with the victims's cell phone, which was still on. It was located on the table near the victim's wallet. The WOW cable van is a 2004 GMC van manufactured in the state of Michigan.

*Id*. at 17-18. Petitioner agreed with the truth of these facts. *Id*. at 18. According to her own statements she wanted to plead guilty, because she was, in fact, guilty of the charges. *Id* at 19.

At the time of her sentencing hearing, Petitioner indicated she had received a copy of the PreSentence Investigation Report, and had reviewed that report with her attorney. *Sentencing Transcript*, at 3. She had no objections to the factual statements in the report or the probation officer's conclusions. *Id*. at 4. Her recommended sentence on Count One was 110 to 137 months imprisonment; Count Two required she serve a mandatory consecutive minimum term of 120 months imprisonment. *Id*. at 5; *PreSentence Investigation Report*. The probation officer recommended that she serve an aggregate term of 252 months imprisonment. *See PreSentence Investigation Report*. Pursuant to the terms of her negotiated guilty plea, the Court imposed 230 months imprisonment. Defense counsel stated:

> Your honor, prior to entering into the plea agreement, the parties gave great thought as to what an appropriate resolution of this case would be. Ms. Mathis was brought into the loop in the discussion, and that's why the plea agreement was structured the way it was and presented to the Court the way it was. Given the Court's acceptance of the plea agreement, which would require the Court to impose a sentence of 230 months, my comments would be merely to express my thanks to the Court to view the case the way it has, and that would be all, Your Honor.

*Id*. at 7. When Petitioner was then asked if she had anything to say to the Court, she responded,

"No." *Id.*

In view of this record, Petitioner has failed to establish either that her attorney performed in a constitutionally inadequate manner, or that, but for his inadequate performance, she would not have pleaded guilty, but would have proceeded to trial. .

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Machibroda, supra*, 368 U.S. at 495-496, 82 S.Ct., at 514 (s 2255); *Price v. Johnston, supra*, at 334 U.S. 266, 286-287, 68 S.Ct. 1049, 1060-1061, 92 L.Ed. 1356 (s 2243).

*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).

Regardless of whether the government had recovered the firearm used in the assault against Valencia, the evidence against her was strong, in view of her possession and use of his cell phone and wallet. Further, Valencia identified her as his assailant from the photographs he was shown by police. By pleading guilty, she substantially reduced her potential prison exposure. Under these circumstances, it is unlikely that counsel would have advised against entering a plea of guilty. Further, Petitioner indicated that she had reviewed the charges against her with counsel, that she was satisfied with his representation, that she wanted to plead guilty, and that she understood and agreed with the terms of her guilty plea. This Court indulges a strong presumption that these statements were truthful. *Id.* at 74, 76. Petitioner fails to indicate, and the record does not reflect, any additional motions that defense counsel could have filed, but did not, that likely would have resulted in a further reduction of her sentence.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Elizabeth A. Preston Deavers
_____
Elizabeth A. Preston Deavers
United States Magistrate Judge